UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA/ SEATTLE

DONOVAN B.,

                Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 3:22-cv-5425-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of plaintiff's application for Supplemental Security Income disability benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court REVERSES and REMANDS defendant's decision to deny benefits, for additional proceedings.

## I.  ISSUES FOR REVEW

1. Did the ALJ err in failing to develop the record?
2. Did the ALJ err in determining that plaintiff's spinal impairments were not severe impairments at step-two of the evaluation?
3. Did the ALJ properly evaluate the medical opinion evidence?
4. Did the ALJ properly evaluate plaintiff's testimony?

    5.  Did the ALJ properly evaluate lay witness evidence?

    6.  Did the ALJ properly determine plaintiff's Residual Functional Capacity ("RFC").

## II.    BACKGROUND

Plaintiff filed applications for DIB and SSI on August 8, 2018, alleging a disability onset date of April 18, 2018. Administrative Record ("AR") 21. Plaintiff's applications were denied. *Id.* Administrative Law Judge Lawrence Lee ("ALJ") held a hearing, and plaintiff was unrepresented by counsel during the hearing, on April 22, 2021. AR 41–64. On May 5, 2021, the ALJ issued a decision finding that plaintiff was not disabled. AR 21–33. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner, Social Security Administration ("Commissioner"). AR 8–10.

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

IV.   DISCUSSION

In this case, the ALJ concluded that plaintiff had the severe medically determinable impairments of left knee fracture, carpal tunnel right upper extremity, obesity, depression, and anxiety. AR 23. The ALJ also concluded that plaintiff had the non-severe impairments of right knee and hip pain and obesity. AR 24. Based on the limitations stemming from these impairments, the ALJ found that plaintiff could perform light work. AR 26. Relying on the vocational expert ("VE") testimony, the ALJ found that plaintiff could not perform past relevant work, but could perform jobs existing in significant numbers in the national economy. AR 32–33. The ALJ determined that plaintiff was not disabled. AR 33.

1.   Whether the ALJ fail to develop the record

Plaintiff argues that the ALJ failed to fully and fairly develop the record in this matter. Dkt. 10 at 2–3. Specifically, plaintiff contends that the ALJ failed to obtain a DSHS evaluation completed by Florence Fadele, ARNP, as well as x-rays of plaintiff's lumbar spine, bilateral hip, and bilateral knees, which were mentioned in a treatment note by Nurse Fadele. *Id. citing* AR 535, 453.

The ALJ has a duty to fully and fairly develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is unrepresented, "the ALJ must be especially diligent in exploring for all the relevant facts." *Id*. However, this duty is only triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Castaneda v. Astrue*, 344 F. App'x 396, 399 (9th Cir. 2009).

3

The ALJ did not err in failing to further develop the record. Here, the treatment notes at issue state, "x-ray of right hip revealed no acute bony abnormality" and "x-ray of right knee was unremarkable". AR 535. Additionally, although Nurse Fadele noted that plaintiff had brought paperwork to fill out for declaration of permanent disability, she also noted that she "advised plaintiff that there has been no permanent disability diagnosis at this time." AR 456. The ALJ considered both of these pieces of evidence in making a determination. AR 24, 29. The record in this matter was neither ambiguous nor inadequate and therefore the ALJ did not fail to develop the record by not obtaining the evidence mentioned in the treatment notes.

2. <u>Whether the ALJ erred in determining that plaintiff's spinal impairments were not severe impairments at step two of the evaluation</u>

The ALJ did not find plaintiff's lumbar degenerative disc disorder and lumbar radiculopathy to be a medically determinable impairment at step two of the sequential evaluation. AR 23. Plaintiff contends that this omission is error. Dkt. 10 at 3. Alternatively, plaintiff argues that the ALJ erred by failing to include the limitations attributable to these impairments in the RFC finding. *Id.*

At step two, the "medical severity" of a claimant's impairments is considered. 20 C.F.R. 404.1520(a)(4)(ii), § 416.920(a)(4)(ii). An impairment is not considered to be "severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A plaintiff has the burden to show (1) they have a medically determinable impairment or combination of impairments; (2) the impairment or combination of impairments is severe; and (3) the impairment lasted at least 12 months. *See Bowen v. Yuckert*, 482

4

1   U.S. 137, 146, (1987); 20 C.F.R. § 404.1520(c), 416.920(c).

2       The ALJ determined at step two that plaintiff had the following severe impairments:
3   left knee fracture, carpal tunnel right upper extremity, obesity, depression, and anxiety.
4   AR 23. The ALJ discussed plaintiff's reports of back pain and the impact on plaintiff's
5   RFC, finding plaintiff could stand/ walk for four hours total in an eight-hour workday,
6   could occasionally climb ramps and stairs, but could never climb ladders ropes or
7   scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, and could only
8   occasionally work at unprotected heights and with moving mechanical parts. AR 26.

9       Since the ALJ ultimately decided step two in plaintiff's favor, any error regarding
10  these impairments is harmless. If the ALJ considers an impairment's effect on a
11  claimant's ability to do work activities and includes those limitations in the RFC, the
12  omission of the impairment from the step two evaluation is harmless error. *See Molina*
13  *v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Buck v. Berryhill*, 869 F.3d 1040, 1049
14  (9th Cir. 2017). Furthermore, plaintiff does not address how these omissions impacted
15  his RFC – accordingly, any such error was harmless at step two. *See Ludwig v. Astrue*,
16  681 F.3d 1047, 1054 (9th Cir. 2012).

17

18      3.  <u>Whether the ALJ erred in evaluating Dr. Senske's Opinion</u>

19      Plaintiff alleges that the ALJ erred in evaluating the medical opinion of Dr. Senske,
20  Psy. D. Dkt. 10 at 4–5.

21      Plaintiff summarizes other medical evidence without making substantive argument
22  about the ALJ's evaluation of this evidence. Dkt. 10 at 5–11. The Court will not consider
23  matters that are not "'specifically and distinctly'" argued in the plaintiff's opening brief.

24

25

*Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)). The Court thus does not consider the ALJ's evaluation of any opinions other than those specifically raised as specific issues with legal argument.

Plaintiff filed the claim on August 10, 2018, so the ALJ applied the 2017 regulations. *See* AR 21. Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). The Court found that "the requirement that ALJ's provide 'specific and legitimate reasons'[1] for rejecting a treating or examining doctor's opinion…is incompatible with the revised regulations" because requiring ALJ's to give a "more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources." *Id.* at 792. Under the new regulations,

> an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

---

[1] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate reasons").

6

1   *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating

2   doctor's opinion as unsupported or inconsistent without providing explanation supported

3   by substantial evidence." *Id.* at 792.

4       Dr. Senske examined plaintiff in March 2019. AR 513–515. Dr. Senke's evaluation

5   consisted of a clinical interview, a mental status examination, and a review of plaintiff's

6   Valley View Health Center 01/09/2019 office visit for generalized anxiety. Dr. Senske

7   opined plaintiff's social functioning would be limited because "he tends to avoid and

8   isolate." AR 515. In addition, Dr. Senske found that plaintiff's concentration, pace, and

9   persistence would be "[p]oor with difficulty sustaining activities for lengthy periods of

10  time" and that "completing activities of daily living in a timely manner is somewhat

11  limited." *Id.* Although Dr. Senske determined in a functional assessment that plaintiff's

12  ability to reason remained intact, Dr. Senske also found plaintiff had impairments with

13  understanding and memory, sustained concentration and persistence, social interaction,

14  and adaptation, and characterized plaintiff's mental condition as "appears to be fairly

15  severe panic disorder with agoraphobia." AR 515. *Id.*

16      The ALJ found Dr. Senske's opinion to be only somewhat persuasive, reasoning that

17  it is: (1) only somewhat consistent with the objective medical evidence, (2) only

18  somewhat consistent with claimant's demonstrated functioning, and (3) based on not

19  only mental functioning but also on the claimant's self-reported physical abilities which

20  is outside his area of expertise. AR 31.

21      With respect to the ALJ's first two reasons, the new regulations require the ALJ to

22  consider the "consistency" of a medical source's opinion with the evidence from other

23  medical sources and nonmedical sources in the claim; the more consistent the medical

24

25

opinion is with this evidence, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(2); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (An ALJ may give less weight to medical opinions that conflict with treatment notes).

The new regulations also require an ALJ to consider the "supportability" of a medical opinion, meaning that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions" will be. 20 C.F.R. § 416.920c(c)(1).

Here, the ALJ found that during the period at issue, plaintiff typically exhibited intact cognition, normal attention and concentration, fair to good judgment and insight, was consistently alert and fully oriented with appropriate appearance, normal speech, normal psychomotor activity, logical thinking, and his mental status examinations were consistently within normal limits. AR 30, (*citing* 397, 399, 401, 402, 429, 432, 438, 445, 449, 603, 608, 629, 634, 649). Yet the ALJ did not address the medical records showing the extent of plaintiff's panic attacks or agoraphobia and therefore did not have valid reasons, supported by substantial evidence, for discounting the opinion of Dr. Senske.

The ALJ did not mention that a few weeks before the alleged date of onset (April 18, 2018), plaintiff had been assessed on March 21, 2018 with having major depressive disorder, recurrent episode severe, and panic disorder – he had a suicidal ideation and a plan that involved a noose; plaintiff had participated in treatment from March 14, 2018 to May 19, 2018 for intense depressive episodes. AR 403–405. Plaintiff told a therapist his panic attacks were so bad that "he worries about falling off a roof" or "what happens if I had this issue, and I fall off the ladder." AR 405. Plaintiff underwent treatment again (immediately after the evaluation on March 18, 2019 with Dr. Senske) between March

19, 2019 and June 20, 2019. AR 410–411, 421, 428, 437–438 and showed some improvement but the record shows another period of severe symptoms such as impulsive behavior, mood swings, racing thoughts, and difficulty focusing his attention, in July 2019 (AR 448–450).

The United States Court of Appeals for the Ninth Circuit has held invalid the discounting of a medical source opinion on the basis of waxing and waning symptoms, because symptoms of mental health conditions commonly fluctuate in severity. *Revels v. Berryhill,* 874 F.3d 648, 663 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014). Here, Dr. Senske's opinion was not altogether inconsistent with the medical record – the medical record demonstrated the fluctuation of plaintiff's mental health symptoms. The ALJ failed to take into account this waxing and waning nature of plaintiff's mental health symptoms.

For the reasons explained herein, the Court finds there is not substantial evidence to support the ALJ's discounting of this medical opinion; therefore, the ALJ erred in evaluating the medical opinion of Dr. Senske.

4. <u>Whether the ALJ properly evaluated plaintiff's testimony</u>

Plaintiff contends that the ALJ did not provide clear and convincing reasons for discounting his symptom testimony. Dkt. 10 at 12–15.

Plaintiff testified that he experienced symptoms of anxiety, preventing him from being able to effectively interact with other people. AR 54–55, 317. He testified that he takes medication for his depression but was working with his doctor to get off of them because it caused weight gain. AR 53. Plaintiff testified that he saw a therapist once a

month until the therapist retired. AR 56. Plaintiff also stated that he can pay attention for 30 minutes at a time. AR 316.

Additionally, plaintiff stated that he struggled with opioid and methamphetamine dependence until two years before the hearing, when he was prescribed Suboxone. AR 57–58. As for his physical symptoms, plaintiff testified to back and knee pain. AR 51. He testified that he can only walk for 15 minutes before needing to stop for a 5-10-minute break. AR 316. He also testified that he was recovering from knee surgery on his left knee but explained that his knee is now worse than it was before surgery. AR 51.

When asked about his living situation during the relevant period, plaintiff testified that he helps with light chores around the house. AR 51. Plaintiff testified that he mows the yard but it takes him a while because he can only do it in sections. AR 57. He testified that he calls and texts friends daily and occasionally attends church but mostly spends time with family. AR 51, 54, 315.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 27. However, the ALJ discounted plaintiff's symptom testimony as inconsistent with medical evidence and other evidence in the record. *Id.* In discounting plaintiff's testimony, the ALJ reasoned that plaintiff's testimony was not entirely consistent with (1) the medical record, (2) plaintiff's activities of daily living, and (3) plaintiff's improvement with treatment. AR 27–30.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing

a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

With respect to the ALJ's first reason, inconsistency with the objective evidence may serve as a clear and convincing reason for discounting a claimant's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

For the reasons discussed above, the ALJ's finding that plaintiff's testimony concerning his mental health impairments was somewhat inconsistent with the record is not supported by substantial evidence. AR 30; *see supra* Section 3. With respect to plaintiff's physical impairments, the ALJ found that despite plaintiff's complaints of pain, on examination plaintiff typically exhibited a good range of motion, intact sensation and motor function in his extremities, and a normal gait. AR 23, *citing* 625, 634, 694, 701–02, 825–26, 834, 861, 863, 865, 874, 879. Additionally, the ALJ noted that on two separate occasions plaintiff asked his primary care provider to fill out paperwork for a declaration of permanent disabling diagnosis and both times his provider informed him

that there had been no permanent disability diagnosis. AR 29, *citing* 456, 473. Accordingly, the ALJ's finding that plaintiff's allegations concerning his physical impairments were somewhat inconsistent with the medical record is supported by substantial evidence. However, the ALJ's finding that plaintiff's allegations concerning his mental impairments were somewhat inconsistent with the medical record is not supported buy the medical record because the ALJ failed to take into account the waxing and waning nature of mental health symptoms.

With respect to the ALJ's second reason, an ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ cited plaintiff's ability to prepare meals, do dishes and laundry, attend church regularly, do yard work with additional restraints, and manage his finances. AR 30. The ALJ also cited evidence that plaintiff engaged in continued work activity in June and October 2020. AR 30.

Plaintiff's activities of daily living are not inconsistent with his alleged work limitations because these activities do not contradict with his other activity nor do they meet the threshold for transferable work skills. *See Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007*); Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

As for plaintiff's continued work activity, an ALJ may discount a claimant's allegations of disabling limitations by contrasting that testimony with the claimant's continued work activity after his alleged onset date. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997) (noting that an ALJ may weigh inconsistencies between a claimant's testimony and his or her work activity); *see also Bray v. Comm'r Soc. Sec.*

1  *Admin.*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (finding that the ALJ properly

2  discounted a claimant's subjective allegations when she worked after her alleged onset

3  date and continued to seek employment).

4      Here the ALJ cites treatment notes from Willapa Behavioral Health between July

5  2019 and December 2020. AR 602–654. In the notes plaintiff's providers mention that

6  plaintiff reported being busy with his work, working for another individual along with

7  maintaining his own business, and feeling better when engaged in work activity. AR

8  610, 622, 619, 648. However, plaintiff's providers note that in this time period plaintiff

9  also expressed financial difficulty and reported that he was working despite pain, stating

10 "I'm still working, but I can't slow down. I pay for it at night!" AR 608, 617, 629, 637. *See,*

11 *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007) (finding that when a

12 disability claimant attempted to return to work because of economic necessity, "it is at

13 least as likely that the claimant tried to work in spite of his symptoms, not because they

14 were less severe than alleged"). Therefore, plaintiff's continued work activity does not

15 contradict his alleged work limitations.

16     With respect to the ALJ's third reason, a finding that a claimant's condition improved

17 with treatment can serve as a clear and convincing reason for discounting his testimony.

18 *See* 20 C.F.R. § 404.1529(c)(3)(iv) (the effectiveness of medication and treatment are

19 relevant to the evaluation of a claimant's alleged symptoms); *Wellington v. Berryhill*, 878

20 F.3d 867, 876 (9th Cir. 2017) (evidence of medical treatment successfully relieving

21 symptoms can undermine a claim of disability).

22     As for plaintiff's mental health symptoms, the record shows that plaintiff's symptoms

23 improved somewhat but not consistently, with treatment. AR 30, 648, 622, 619, 610. As

1 for plaintiff's physical symptoms, the record supports a finding that some of plaintiff's
2 symptoms improved with treatment. Plaintiff reported symptoms of carpal tunnel
3 improved after undergoing surgery. AR 578.
4     However, the ALJ's finding that plaintiff's knee and back pain improved with
5 treatment is not supported by substantial evidence. The ALJ primarily referred to
6 evidence that plaintiff's knee or his lower back pain improved temporarily with
7 medication. AR 30, *citing* 437, 598. In fact, it was noted that plaintiff experienced only
8 two or three days of pain relief from lumbar epidural steroid injections and afterwards
9 plaintiff continued to rate his pain at 10/10 in severity. AR 574. Accordingly, the
10 evidence does not support a finding that plaintiff's physical symptoms improved with
11 treatment.
12     Therefore, the ALJ did not provide substantial evidence of clear and convincing
13 reasons to discount plaintiff's testimony. Furthermore, if the ALJ had not discounted
14 plaintiff's testimony regarding his pain and mental limitations, then the ALJ's RFC may
15 have included additional limitations on plaintiff's ability to walk, stand, sit, and interact
16 with the public.

        5.   <u>Did the ALJ properly evaluate lay witness testimony</u>

19     Plaintiff alleges that the ALJ failed to consider the lay witness testimony of plaintiff's
20 wife, Anna Maria Diaz, and.SSI facilitator Marilyn Meldrich. Dkt. 10 at 15–16.
21     For cases filed after March 27, 2017, such as this one, an ALJ is "not required to
22 articulate" how he or she evaluated evidence from non-medical sources such as
23 educational personnel, public and private social welfare agency personnel, and other

lay witnesses. 20 C.F.R. § 404.1502(e). Yet, the Ninth Circuit has suggested that its pre-2017 standard requiring "germane" reasons to reject lay witness testimony applies to an ALJ's evaluation of lay witness testimony post-2017. *Muntz v. Kijakazi*, No. 22-35174, 2022 WL 17484332, at * 2 (9th Cir. Dec. 7, 2022) (applying "germane reasons" standard to ALJ's evaluation of third-party function report from claimant's husband); *Weitman v. Kijakazi*, No. 21-35748, 2022 WL 17175060, at * 4 n. 4 (9th Cir. Nov. 23, 2022).

Here the ALJ discredited the function report completed by Ms. Diaz for the same reasons that he discounted plaintiff's testimony. AR 31.

An ALJ may reject lay witness testimony for the same reasons he rejected a claimant's subjective complaints if the lay witness statements are "similar to such complaints." *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Here, conversely, the ALJ re-stated the same reasons for discounting plaintiff's testimony that this court has determined to be inadequate. *See* AR 31. For the reasons discussed above, the similarity between plaintiff's testimony and the statements of these lay witnesses cannot serve as a germane reason for discounting them.

Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his condition. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The fact that lay testimony may offer a different perspective than medical records alone "is precisely why such evidence is valuable" in making a disability determination. *See Diedrich*, 874 F.3d at 640. Lay witnesses, by definition, lack medical expertise, and this lack of expertise, in and of itself, cannot serve as a valid reason for discounting their statements.

Accordingly, the ALJ has not provided germane reasons for discounting Ms. Diaz's lay witness statement.

The ALJ did not cite the observations of agency employee Melissa Meldrich in evaluating the opinion evidence.

In evaluating the record, an ALJ may consider observations by agency personnel. *See* Social Security Ruling ("SSR") 16-3p ("Other evidence that we will consider includes statements from . . . any other sources that might have information about the individual's symptoms, including agency personnel."); *see also* 20 C.F.R. § § 404.1529(c)(3), 416.927(c)(3) ("We will consider all of the evidence presented, including . . . observations by our employees and other persons.").

Yet the ALJ is not required to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

Here, the observations of employee Meldrich were based upon a brief encounter with plaintiff, and were intended to gather basic information about plaintiff's condition, not to provide testimony about his functional limitations. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (finding that an individual must have "sufficient contact" with the claimant during the period at issue "to qualify as a competent lay witness.").

Accordingly, the ALJ did not err in declining to assess this evidence.

    6. <u>Whether the errors were harmful; and whether the ALJ properly determined plaintiff's Residual Functional Capacity ("RFC")</u>

1    Plaintiff contends the ALJ harmfully erred in assessing plaintiff's RFC because the
2    ALJ failed to account for all limitations shown by the evidence. Dkt 10 at 17.
3    The ALJ determined that plaintiff would have an RFC that included the following
4    limitations relevant to the issues in this case: "to perform light work. . . except he could
5    stand/walk for four hours total in an eight-hour workday. He would frequently handle,
6    finger, and feel with the right upper extremity. He could occasionally climb ramps and
7    stairs but never climb ladders, ropes, or scaffolds. He could occasionally balance,
8    stoop, kneel, couch, and crawl. He could frequently work in . . . vibration but only
9    occasionally work at unprotected heights and with moving mechanical parts. He could
10   perform simple, routine tasks and interact occasionally with the Public." AR 26.
11   An error that is inconsequential to the non-disability determination is harmless.
12   *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If the errors
13   of the ALJ result in a residual functional capacity (RFC) that does not include relevant
14   work-related limitations, the RFC is deficient, and the error is not harmless. *Id; see also,*
15   *Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v.*
16   *Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx.
17   715, 718 (9th Cir. 2021) (unpublished).
18   Here the ALJ did not include the degree of limitations assessed by Dr. Senske in
19   formulating the RFC. Specifically, the ALJ did not include Dr. Senske's assessment that
20   plaintiff would have limitations with understanding and memory, sustained concentration
21   and persistence, social interaction, and adaptation, and sustaining activities for lengthy
22   periods of time. AR 515. The ALJ also did not include the degree of mental limitations
23   reported by plaintiff and Ms. Diaz in regard to plaintiff's ability to interact with the public,

handle stress and changes in routine, understand basic instructions, and pay attention. AR 309, 316, 317. Additionally, the ALJ did not include the degree of physical limitations reported by plaintiff and Ms. Diaz in regard to plaintiff's ability to stand/walk, stoop, kneel, squat, bend, and sit. AR 309, 312, 316.

Because the Court has found the ALJ erred in discounting the opinion of Dr. Senske, rejecting plaintiff's statements about symptoms, and rejecting Ms. Diaz's lay witness testimony, this matter will be reversed and remanded for further consideration on this basis, and the RFC will need to be re-evaluated.

### III.   CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is REVERSED and REMANDED for further administrative proceedings. On remand, the Commissioner must hold a de novo hearing, allow plaintiff to introduce new evidence and testimony, and re-evaluate plaintiff's statements about symptoms and limitations as well as other evidence in the record, and re-evaluate the five-step inquiry.

Dated this 10th day of February, 2023.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge